UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>v. )<br> )<br>YULIA ABAIR )  | CAUSE NO. 3:12-CR-076 JD |

## OPINION & ORDER

Yulia Abair is on trial, charged with eight counts of structuring financial transactions to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3). [DE 1]. At the close of the government's case in chief, the defendant made two oral motions. First, the defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Second, and for the first time in this criminal process, the defendant attacked the indictment as multiplicitous. She argues that the eight cash deposits separately charged in her indictment were all manifestations of the same structuring scheme, and that they should have been charged as one. The court denied the defendant's Rule 29 motion from the bench. After hearing argument, the court recessed the jury temporarily and took the second motion under advisement. Having reviewed the law and the facts of this case, the court now finds that the challenge to the indictment was waived by the defendant's failure to raise it before trial. But that does not mean the defendant might be stuck with a multiplicitous conviction and sentence; if that is what occurs, the defendant may ask the court to merge counts of conviction, or to vacate all but one count, during the sentencing phase.

## DISCUSSION

Pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, the following type of motion, among others, must be raised before trial:

> **(B)** a motion alleging a defect in the indictment or information – but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense[.]

1

Fed. R. Crim. P. 12(b)(3)(B). The defendant's motion challenging the indictment as multiplicitous is "a motion alleging a defect in the indictment[,]" and, as defense counsel was careful to emphasize, it is <u>not</u> a claim that the indictment outright fails to state an offense. Far from being an argument that the indictment charges no crime, a motion claiming multiplicity is an argument that the indictment charges the same crime over and over again. As a result, the exception for claims that the indictment fails to state an offense does not apply. In fact, defense counsel admitted that he could not argue for dismissal of the indictment because the government could pursue any of the charges. The Seventh Circuit has resolutely held that Rule 12 "requires a criminal defendant to raise a multiplicity claim based on the indictment before trial." *United States v. Griffin*, 765 F.2d 677, 682 (7th Cir. 1985). In fact, this motion should have brought not only before trial, but before the pretrial motions deadline set by this court. *See* Rule 12(c).

Obviously, it was not. That is grounds for waiver. *United States v. Wilson*, 962 F.2d 621, 626 (7th Cir. 1992) (Rule 12 "requires defendants to raise multiplicity challenges to indictments before trial, and that failure to do so amounts to waiver"). As stated in Rule 12(e) of the Federal Rules of Criminal Procedure, "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides." The court will grant relief from the waiver only for "good cause." *Id*. Defense counsel claims that good cause for waiting to raise the motion exists because the motion depended on the evidence produced at trial. He argues that the indictment, as written, could have charged non-multiplicitous instances of structuring, or it could have charged the same instance of structuring eight times, depending on the evidence the government produced to support it.

This argument is not persuasive. If all it took to reserve a Rule 12(b)(3) motion until mid-trial was some ethereal uncertainty about what the evidence might show, then every defense attorney

could do it in every case. Trial evidence is inherently uncertain. Moreover, defense counsel's argument simply does not fit with what happened in this case. Defense counsel had access months ago, through discovery, to all of the evidence he needed to learn that multiplicity might be an issue. Defense counsel even conceded, in arguing the motion, that he knew multiplicity might be an issue before trial commenced. He concedes that he knew the nature of the currency transfers, including that all of the funds came from Citibank Moscow and that the defendant was transferring an amount of ~$67,000.00 in total for the purpose of purchasing a home, some time ago. Those exact issues were discussed in open court early in the case, as the need for the defense to attempt to secure witnesses from Citibank Moscow was the basis for a continuance. [DE 20; DE 26]. In his motion to continue on November 21, 2012, defense counsel acknowledged that Citibank Moscow was the source of the funds, and that the funds transferred were the proceeds of the sale of the defendant's residence in Russia. [DE 20 at 1]. The evidence has not changed between then and now. To the contrary, the government's case proceeded exactly as the defense thought it would. In some other case, where the evidence presented at trial differed from what was produced in the pretrial process, the defendant's argument might be a good one. But in this case, to say that this is the first time the defendant knew the counts in the indictment might be multiplicitous by virtue of their "single source" origin at Citibank Moscow simply would not be accurate.

For the foregoing reasons, there is no good cause for relief from the waiver in this case. The rule exists to prevent defense counsel from pushing the government into a corner in this way, so that the government is left with a bad indictment. Any modification the court might make to the indictment risks raising issues of impermissible or constructive amendment, thus potentially invalidating any guilty verdict that *is* returned, despite the fact that the defendant concedes that the indictment does state an offense. *Stirone v. United States*, 361 U.S. 212, 215-16 (1960) (emphasizing

3

the black-letter rule that "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself"); *United States v. Pigee*, 197 F.3d 879, 886 (7th Cir. 1999) ("[A] constructive amendment occurs where proof at trial goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury. Such error . . . which in a jury trial can also be generated or exacerbated by faulty instructions, violates the Fifth Amendment since the Grand Jury Clause limits the available bases for conviction to those contained in the indictment."). Moreover, although double jeopardy might not bar retrial if the indictment was dismissed on the defendant's request to provide an opportunity for amendment by the grand jury, *see United States v. Miles*, 327 Fed.Appx. 797 (10th Cir. 2009) (where the defendant himself brought about the termination of the first proceeding on a basis other than adjudication of his guilt or innocence, double jeopardy did not preclude a second proceeding); *United States v. Kehoe*, 516 F.2d 78 (5th Cir. 1975) (holding that double jeopardy did not bar retrial where defendants obtained dismissal, after the jury was empaneled, by alleging a defect in the indictment), it would certainly at least make that an issue. And, it would undeniably impair the government's case in other ways. It would mean a substantial delay, and witness memories would fade even further. The Rule 12 waiver requirements are ultimately about "efficiency and fairness[,]" *see Griffin*, 765 F.2d at 682, and those considerations support enforcing the waiver in this case.

Finally, the court sees no prejudice resulting from the enforcement of the waiver, for three reasons.

First, the defendant has affirmed that each count, taken separately, adequately states a criminal offense, because the introductory paragraph of the indictment makes clear that each offense is an offense of "structuring." The indictment does not literally charge depositing money in the bank as a crime. *See United States v. Davenport*, 929 F.2d 1169, 1171-72 (7th Cir. 1991). There is

therefore no chance, even if the jury convicts on all eight counts, that any one conviction, standing alone, would be invalid.

Second, to the extent that the defendant might worry the jury will be more likely, as a result of the sheer number of the eight felony counts charged, to *assume* that the defendant is a criminal, the court reminds the defendant that various jury instructions exist to prevent that from happening. Among other things, the jury will be instructed not to draw any assumptions of guilt based on the indictment or on the fact that the defendant has been charged with criminal offenses. In fact, the jurors were screened for their ability to honor that rule during *voir dire*. The jury will also be instructed very clearly to consider each count separately. The Seventh Circuit assumes that juries follow their instructions, and that the instructions work. *See United States v. Rodriguez*, 929 F.2d 1224, 1228 (7th Cir. 1991) ("Generally, we assume the jury followed the court's instruction and that the court's curative measures were sufficient to prevent any harm"); *see also United States v. Fulk*, 816 F.2d 1202, 1205 (7th Cir. 1987). This particular jury affirmed, during *voir dire*, that it can and will follow the court's instructions, and that should alleviate any potential that the mere fact that the defendant is charged with eight crimes will result in a propensity conviction, or in a conviction for some non-specific "larger" crime than what is charged. And the danger of any prejudice is unlikely in a case, like this one, where each count alleges a discrete act, the government's evidence of the individual transactions is strong, and any jury compromise is unlikely. *See e.g., Ball v. United States*, 470 U.S. 856 (1985) (Stevens, J., concurring); *United States v. Shanks*, 97 F.3d 977, 980-81 (7th Cir. 1996).

Third, the fact that the defendant has waived her ability to challenge the *indictment* as multiplicitous does not mean she has waived the ability to challenge any resulting *conviction or sentence* as multiplicitous. If the jury returns a guilty verdict on all, or more than one, of the counts,

5

the defendant may renew her *Davenport* multiplicity challenge during the sentencing phase. If the court finds that the convictions are multiplicitous, it may merge the counts or vacate all but one. Since the defendant does not challenge that any one count, standing alone, could produce a valid conviction, that procedure would produce the desired result. Moreover, it is the most common way of dealing with a claim of multiplicity. *See, e.g., United States v. Parker,* 508 F.3d 434 (7th Cir. 2007); *United States v. Kerley*, 544 F.3d 172, 179 (2d Cir. 2008) (multiplicitous indictment remedied by remand for resentencing); *United States v. Tann*, 577 F.3d 533, 543 (3d Cir. 2009) (multiplicitous indictment remedied by vacating one count); *United States v. Leftenant*, 341 F.3d 338, 348 (4th Cir. 2003) (multiplicitous indictment remedied by remand to vacate all but 1 count); *United States v. Miller*, 576 F.3d 528, 531 (5th Cir. 2009) (multiplicitous indictment remedied by vacatur and remand for resentencing). In particular, any of the "collateral consequences" of unnecessary multiple convictions contemplated by *Ball*, 470 U.S. 856 – such as stigma, impeachment potential, and effect on future sentencing or parole eligibility – would be just as adequately remedied by vacating a conviction after the fact as by precluding it up front.

## CONCLUSION

The defendant's motion attacking the indictment as multiplicitous is **DENIED AS WAIVED**. The issue of multiplicity can be addressed again during the sentencing phase, if necessary.

SO ORDERED.

ENTERED:   March 13, 2013

/s/ JON E. DEGUILIO
Judge
United States District Court